Filed 2/9/22  P. v. Reyes CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>OSCAR REYES,<br><br>  Defendant and Appellant. | F081067<br><br>(Super. Ct. No. CR-19-008764)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Robert B. Westbrook, Judge.

Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Cameron M. Goodman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted appellant Oscar Reyes of battery on a spouse or cohabitor (Pen. Code, § 273.5, subd. (a); count II) and intimidating a witness and/or victim (Pen. Code, § 136.1, subds. (a), (b); count III).[1] In April 2020, the trial court suspended imposition of sentence and it placed him on formal probation for three years under various terms and conditions.

Appellant seeks reversal of his judgment, raising claims involving alleged evidentiary and instructional errors. We reject his arguments and affirm.

## BACKGROUND

Appellant and the victim in this matter have two minor children in common. They were residing together as a family when the domestic violence charged in this matter occurred.

## I. Appellant Is Arrested Following An Incident Of Domestic Violence.

On September 14, 2019, the victim in this matter called 911. That call was recorded and it was played for the jury. In the call, the victim reported that appellant had hit her.

That same night two police officers, Lopez and Armstrong, responded to appellant and the victim's residence. Lopez interviewed the victim outside.[2] The victim had a cut and swelling to the top of her left eyebrow. She seemed panicked and she was crying. The victim informed Lopez that appellant was the person who had injured her.

The victim informed Lopez that appellant drinks daily, and he is aggressive when he is intoxicated. The victim stated that appellant had been intoxicated that night, and he

---

[1] In count I, the jury acquitted appellant of threatening to commit a crime (Pen. Code, § 422, subd. (a)). In count III, the jury found it not true that, in the commission of intimidating a witness and/or victim, appellant did so in a malicious manner within the meaning of Penal Code section 136.1, subdivision (c).

[2] Both appellant and the victim speak Spanish. Lopez speaks Spanish, and her interviews were conducted in that language.

had wanted the victim to look at his vehicle and a possible dent. Appellant had pushed the victim outside their residence. She had pushed back, and appellant punched her face. After striking her, appellant told the victim to not contact law enforcement or say anything about what had happened. Appellant wiped the victim's face with a towel.

The victim reported to Lopez that, after being struck, she retreated to a bathroom with her minor children and she locked the door. Appellant opened the bathroom door with a knife. He held the knife towards the victim "relatively close" to the "general area" of her neck. Appellant told the victim that if he went to jail, "she was going to pay for it." Appellant told her "to wipe the blood off of her cut or else he would hit her again." The victim reported to Lopez that night that she had been scared, and she had believed appellant would use the knife. Before the officers had arrived, appellant had hidden the knife and the towel.

After speaking with the victim, Lopez briefly interviewed appellant that night. According to Lopez, appellant said that the victim "had hit herself." When Lopez tried to clarify what had happened, appellant told Lopez that she "should know already what had happened." The officers took appellant into custody that night.[3]

On the night appellant was arrested, the victim located for Lopez both the knife[4] which appellant had used and the bath towel which had been used to wipe her face. Lopez testified at trial that the towel appeared to have fresh blood on it. Lopez believed that the cut which the victim had received to her eye seemed "deep enough" for the amount of blood Lopez saw.

---

[3]    In Section III of the DISCUSSION below, we address in greater detail the facts surrounding appellant's arrest. In general, appellant had to be physically controlled and taken to the ground. Appellant asserts that the jury should not have been permitted to hear about his uncharged resisting arrest.

[4]    At trial, the victim agreed that this was a "large kitchen knife."

## II. The Victim Changes Her Story Following Appellant's Arrest.

After appellant was arrested, the victim spoke with him a number of times while he was in jail. Those calls were recorded, and some of the recordings were played at trial.

In one recorded call on January 6, 2020, appellant told the victim to "fill out a form to have the charges dropped." Appellant also told the victim that the statement she made "that he was going to cut her" was keeping him in jail.

In another recorded call on January 7, 2020, appellant and the victim had a conversation "about either talking to the judge" or filling out a " 'form' to have the charges dropped." Appellant told the victim to fill out the form saying she had lied. Appellant told the victim that she would likely not need to testify if she submitted such papers.

Starting in January 2020, the victim wrote a series of letters asking for the charges to be dropped.[5] At trial, the victim admitted that appellant had asked her to give letters to the judge and the prosecutor. He had wanted her to help him with his case. The victim complied, and some of the letters were given to the police and at least one (which the victim described as a declaration) was given to appellant's trial counsel.

In her first letter, the victim wrote that she forgave appellant, but she admitted that the incident of September 14, 2019, did happen. Appellant told the victim to write a "better" letter and to give it to the judge. Appellant told her to write that she had hurt herself and that the "thing with the knife didn't happen." The victim wrote a second letter stating she had lied about the knife. She wrote that she had "hit" herself by accident. She said that she had made false accusations about appellant threatening her

---

[5]     At trial, these letters were referred to as "drop letters."

with a knife. She claimed that appellant was innocent. She wrote that she had previously lied because she wanted immigration status.[6]

At trial, the victim admitted that she had not hit herself. She also agreed that she was not in a car accident. Finally, she agreed that she had lied in her writing when she had then claimed to be lying to have a reason for immigration status.

## III.     The Victim's Relevant Trial Testimony.

At trial the victim admitted that she loved appellant, and she agreed she would "do anything" for him. The victim also agreed that she had been honest when speaking with Lopez on the night appellant was arrested.

The victim told the jury that, on the night in question, appellant had wanted her to go outside to see his vehicle because he believed she had "hit the car" and it had been dented. He had been intoxicated that day, and he becomes "aggressive" when he is drinking. Appellant pushed her outside and she tried to stop him. She hit his chest and he struck her with a closed hand. She suffered immediate swelling and bleeding to her face. Appellant told her to clean up, stop crying, calm down, and "not to say anything about anything." He told her that night not to call the police. He threatened to "take" her children if she reported him.

Regarding the knife, the victim provided trial testimony that was, at times, confusing and contradictory. She testified that on the night appellant struck her she went into a bathroom and locked its door. She called 911 from inside the bathroom. Appellant tried to enter the bathroom and he told her to let him in. The victim initially claimed at trial that appellant opened the bathroom door and he did not have a knife.[7] She then

---

[6]     At trial, the victim admitted she was not a citizen of the United States and she had no legal status. She testified that she was aware that a victim of domestic violence can obtain legal status in the United States.

[7]     At trial, the victim testified that her children were with her when appellant entered the bathroom.

agreed that appellant had opened the locked bathroom door with the knife, but she claimed that he then "threw it." After being shown a transcript of her statements to Lopez, the victim agreed that appellant had held a knife but she denied that he had held it up to her. Eventually, the victim agreed at trial that appellant had held a knife in the bathroom, and he "got close" to her while holding the knife. However, she testified inconsistently about how appellant had held the knife. She said variously that the knife was pointed down and in front of appellant's chest, but she also agreed on cross-examination that the knife was pointed up. She admitted at trial that she had been afraid during this incident both for herself and her children.

The victim admitted at trial that she had previously lied about some of the events that had occurred. She had previously written that her injuries were from a car accident. She had claimed that she had "stepped on the brakes [of] the car," and she had hit herself on the steering wheel. At trial, however, she stated that "no accident" had occurred that night and she had "lied when I described that."

## DISCUSSION

**I. The Trial Court Did Not Abuse Its Discretion In Permitting Introduction Of A Prior Incident Of Domestic Violence And Any Presumed Error Is Harmless.**

Appellant asserts that the trial court erred when it permitted the prosecution to introduce into evidence a prior uncharged domestic violence incident that had occurred between appellant and the victim. Appellant contends that his convictions must be reversed due to this alleged evidentiary error.

**A. Background.**

Prior to trial, the court ruled that the prosecutor could introduce into evidence a prior uncharged domestic violence incident that the victim had discussed with Lopez on the night the officers responded to her residence and arrested appellant. Defense counsel informed the court that, while the victim was being interviewed, she had referred "to one

prior incident regarding a threat." Nothing indicated when this prior threat had occurred, and nothing corroborated it. The court ruled that the prior incident did not seem "very specific, but it also doesn't seem very prejudicial in that sense. I'll allow the evidence to be brought forth. It doesn't sound like there's very much of it or unduly time consuming." The court noted that defense counsel could cross-examine the victim "on the weaknesses and the statements."

At trial, the victim testified that, a few months before the charged incident, appellant said he was going to kill her if she was unfaithful to him. Appellant told her that nobody could have her if he could not have her. The victim testified at trial that she told appellant he "wasn't capable" and they stopped arguing on that occasion. During trial cross-examination, the victim testified that, during this prior uncharged incident, she had told appellant to calm down, and he had left their residence.

Lopez informed the jury that, on the night appellant was arrested, she had asked the victim if any prior domestic violence had occurred between the two of them. According to Lopez, the victim informed her that this was the first time appellant had hit her. The jury saw some of the body cam footage from Lopez's interview with the victim. In that footage, the victim informed Lopez that, about three months prior to this incident, appellant had used a knife and threatened to kill her and her children because he was jealous of her relationships with coworkers. She had told appellant to calm down, and he had walked away.[8]

---

[8]     The jury also heard about another encounter between appellant and the victim. The victim testified that on one occasion appellant wanted to have sex with her when he was drunk and she had not wanted to be with him. Appellant had told her that she had to satisfy him because she was "his woman." Eventually, however, he left her alone that night.

7.

## B. Standard of review.

An abuse of discretion standard is used to review a trial court's rulings regarding relevancy and admissibility under Evidence Code section 352.[9] (*People v. Jones* (2017) 3 Cal.5th 583, 609.) We will not reverse such a ruling unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*Ibid*; see also *People v. Williams* (1998) 17 Cal.4th 148, 162 [abuse of discretion review asks whether ruling in question falls outside bounds of reason under applicable law and relevant facts].)

## C. Analysis.

Appellant contends that any probative value of the prior uncharged domestic violence incident was "highly outweighed" by the danger of undue prejudice. He asserts that this evidence "was not necessary" because it did not establish any of the elements of the charged offenses. He maintains that the prior incident was factually different from the present case. He argues that nothing shows a "discernible pattern other than characterizing [him] as a 'generic' batterer." Finally, appellant claims that the trial court did not conduct a " 'closely reasoned' " weighing process mandated by section 352. Appellant insists that he was prejudiced by the introduction of this evidence, which he classifies as "inflammatory." He argues that section 352 was violated because the probative value of this evidence was low "and the probability of confusion was almost a certainty."

We reject appellant's arguments. The trial court did not abuse its discretion and any presumed error is harmless.

### 1. The trial court did not abuse its discretion.

Relevant evidence is defined as having a "tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (§ 210.) A

---

[9] All future statutory references are to the Evidence Code unless otherwise noted.

trial court may exclude otherwise admissible evidence if its probative value is substantially outweighed by its prejudicial effect; that is, if its admission would result in the undue consumption of time, a danger of undue prejudice, confusion about the issues or the danger of misleading the jury. (§ 352.)

Evidence of a person's character or a trait of his or her character "is inadmissible when offered to prove his or her conduct on a specified occasion." (§ 1101, subd. (a).) However, evidence that a person committed a crime, civil wrong, or other act is admissible when relevant to prove some fact such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident other than his or her disposition to commit such an act. (*Id.*, subd. (b).) Moreover, absent certain exceptions, evidence of a defendant's commission of other domestic violence is not made inadmissible by section 1101 if the evidence is not inadmissible pursuant to section 352.[10] (§ 1109, subd. (a)(1).)

In this matter, the prior uncharged act of domestic violence was relevant at trial because it involved the same victim as the charged offenses. This prior act tended to suggest appellant's motive and intent to threaten the victim. (§ 1101, subd. (b).) Thus, this evidence had a tendency to prove or disprove a disputed fact that was of consequence to the determination of this action. (§ 210.)

We disagree that the introduction of this uncharged act was more prejudicial than probative. "Evidence is substantially more prejudicial than probative [within the meaning of section 352] if, broadly stated, it poses an intolerable 'risk to the fairness of the proceedings or the reliability of the outcome' [citation]." (*People v. Waidla* (2000) 22 Cal.4th 690, 724.) The term "prejudice" from section 352 "applies to evidence which

---

[10]     One exception is that evidence of acts occurring more than 10 years before the charged offense is inadmissible under this section unless the trial court determines that the admission of this evidence is in the interest of justice. (§ 1109, subd. (e).)

9.

uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues." (*People v. Jones*, *supra*, 3 Cal.5th at p. 610.)

Here, it cannot be stated that the uncharged prior incident may have evoked a unique emotional bias against appellant. To the contrary, although the jury learned that appellant had previously threatened to kill the victim while holding a knife, the jury also learned that appellant had walked away from the victim without further incident when she told him to calm down. Appellant did not inflict any harm to the victim during the prior incident. Indeed, the victim admitted at trial that, prior to the night of the charged conduct, appellant had never before been violent with her. We do not discern how the jury may have been confused by the brief testimony regarding the prior uncharged threat. We also do not agree that the jury would have been motivated to punish him for that act. In addition, the testimony about this prior incident did not consume an undue amount of time. Thus, we reject appellant's arguments that this evidence created undue prejudice and it should have been excluded. (§ 352.)

Finally, we disagree with appellant's assertion that the trial court failed to make a " 'closely reasoned' " analysis under section 352. The trial court was not required to state on the record why it determined the probative value of the evidence outweighed its prejudicial impact. (*People v. Catlin* (2001) 26 Cal.4th 81, 122; see also *People v. Waidla*, *supra*, 22 Cal.4th at p. 724, fn. 6.) In any event, the trial court did comment that the proposed evidence regarding the prior uncharged domestic violence did not appear prejudicial, and it did not "sound like there's very much of it or unduly time consuming." The court noted that defense counsel could cross-examine the victim "on the weaknesses and the statements." It is apparent that the court exercised its discretion in determining whether or not to admit this evidence.

Based on this record, we will not disturb the trial court's ruling because it did not act in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (See *People v. Jones*, *supra*, 3 Cal.5th at p. 609.) Likewise, the

court's ruling did not fall outside the bounds of reason under applicable law and relevant facts. (See *People v. Williams*, *supra*, 17 Cal.4th at p. 162.) Consequently, an abuse of discretion did not occur and this claim fails. In any event, we also conclude that any presumed error is harmless.

### 2. Any presumed error is harmless.

Appellant asserts that the federal standard under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*) should be used to analyze this claim. According to appellant, his due process rights were violated. Under the *Chapman* standard, a reviewing court must determine beyond a reasonable doubt that the error did not contribute to the verdict. (*People v. Aranda* (2012) 55 Cal.4th 342, 367.)

We disagree that prejudice should be reviewed under *Chapman*. Instead, a trial court's discretionary ruling involving the ordinary rules of evidence does not normally implicate the federal Constitution. (*People v. Cudjo* (1993) 6 Cal.4th 585, 611; accord, *People v. Bradford* (1997) 15 Cal.4th 1229, 1325 [disallowing defense evidence is not also the denial of the right to present a defense].) Due process is not offended by the admission of relevant evidence unless it is so prejudicial as to render the criminal trial fundamentally unfair. (*People v. Jablonski* (2006) 37 Cal.4th 774, 805.) In the absence of fundamental unfairness, the harmless error test of *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*), is used to analyze an evidentiary error that involves state law. (*People v. Partida* (2005) 37 Cal.4th 428, 439.) The question is "whether it is reasonably probable the verdict would have been more favorable to the defendant absent the error." (*Ibid*.)

Here, an alleged evidentiary error of state law occurred. Thus, we will analyze prejudice under *Watson*. We conclude that any presumed error is harmless.

Although the jury found appellant not guilty of making a criminal threat in count I, the remaining evidence against appellant was overwhelming. The victim testified that appellant punched her face with his fist. The victim suffered swelling and bleeding.

11.

Moreover, on the night appellant struck her, he told her not to contact the police, and not to say anything. Later, he asked her to withdraw the charges. At trial, the victim admitted that appellant had asked her to write a "better letter" to give to the judge after she had already written one letter on his behalf. Appellant told the victim to write that she had hurt herself "and that the thing with the knife didn't happen." At trial, the victim admitted that this did not represent the truth.

In count II, the jury found appellant guilty of inflicting corporal injury on the victim (Pen. Code, § 273.5, subd. (a)). In count III, the jury found appellant guilty of attempting to dissuade a witness (Pen. Code, § 136.1, subds. (a), (b)), but it determined that appellant did not act maliciously.

Based on the jury's decision to find appellant not guilty in count I and the overwhelming strength of the remaining evidence, it is not reasonably probable the remaining verdicts would have been more favorable to appellant absent this alleged error. (*People v. Partida*, *supra*, 37 Cal.4th at p. 439.) We can declare that, even if the trial court abused its discretion in permitting introduction of this evidence, any presumed error was harmless. Consequently, prejudice is not present and reversal is not warranted.

## II. Appellant's Due Process Rights Were Not Violated With Instruction From CALCRIM No. 852A And Any Presumed Error Is Harmless.

With CALCRIM No. 852A, the trial court instructed appellant's jury how to consider the evidence of the prior uncharged domestic violence. Specifically, the jury was told that appellant "had previously threatened [the victim] approximately three months prior to the incident in a similar manner." The court defined the term "domestic violence" for the jury, and it instructed that the jurors could consider this evidence "only if the People prove by a preponderance of the evidence that [appellant], in fact, committed the uncharged domestic violence."

In giving this instruction, the trial court explained to the jurors the difference between proof "by a preponderance of the evidence" and "proof beyond a reasonable

12.

doubt." The jurors were instructed to "disregard this evidence entirely" if the People did not meet its burden of proof.

The trial court informed the jurors that, if they decided that appellant committed the uncharged domestic violence, they could—but were not required to—conclude from this evidence that appellant was disposed or inclined to commit domestic violence. Based on that decision, the jurors were instructed that they could also conclude appellant was likely to commit and did commit the crimes charged in this matter. However, the jurors were cautioned that, if they concluded appellant committed the uncharged domestic violence, "that conclusion is only one factor to consider, along with all the other evidence. It's not sufficient by itself to prove [appellant] is guilty of criminally threatening [the victim], inflicting injury on [the victim], or intimidating [the victim] to not to report to law enforcement. [¶] The People must still prove each charge and allegation beyond a reasonable doubt. Do not consider this evidence for any other purpose."

Appellant contends his judgment must be reversed because the trial court instructed the jury with CALCRIM No. 852A. He argues his due process rights were violated. He asserts this instruction is "constitutionally infirm" and it denied him a fair trial. In raising this claim, appellant concedes that similar assignments of error have already been rejected by California appellate courts. Nevertheless, he raises this claim for the purpose of preserving it for federal review.

We reject this claim. Appellant's due process rights were not violated and any presumed error is harmless.

### A.     Appellant's Due Process Rights Were Not Violated.

Section 1109 permits the admission of a defendant's other acts of domestic violence in order to show a propensity to commit such crimes. (*People v. Hoover* (2000) 77 Cal.App.4th 1020, 1024.) Section 1109 "reflects the legislative judgment that in

13.

domestic violence cases, as in sex crimes, similar prior offenses are 'uniquely probative' of guilt in a later accusation." (*People v. Johnson* (2010) 185 Cal.App.4th 520, 532.)

In *People v. Reliford* (2003) 29 Cal.4th 1007, 1016 (*Reliford*), our Supreme Court approved CALJIC No. 2.50.01,[11] a substantially similar instruction to CALCRIM No. 852A. Insofar as applicable, we are, of course, bound to follow our high court's decision in *Reliford*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Additionally, appellate courts have already rejected similar challenges that an instruction under CALCRIM No. 852A lowers the burden of proof. (See *People v. Wilson* (2020) 56 Cal.App.5th 128, 164; *People v. Kerley* (2018) 23 Cal.App.5th 513, 543–544.) Moreover, appellate courts have rejected a due process challenge to section 1109. (See *People v. Hoover*, *supra*, 77 Cal.App.4th at pp. 1028–1029; *People v. Johnson* (2000) 77 Cal.App.4th 410, 420.) We see no reason to question these holdings.

The Legislature has established what evidence is admissible to prove propensity to commit domestic violence. (See generally § 1109, subd. (a)(1).) The evidence here was admissible to prove appellant's propensity to engage in such behavior toward the victim. Consistent with *Reliford*, we hold that appellant's due process rights were not violated when the trial court instructed the jury with CALCRIM No. 852A. In any event, even if presumed error occurred, it was harmless.

### B.    Any Presumed Error Is Harmless.

Even if presumed instructional error occurred in this matter with CALCRIM No. 852A, it was harmless. With CALCRIM No. 220, the jury was told to presume appellant was innocent unless the prosecution established his guilt beyond a reasonable doubt.

---

[11]    CALJIC No. 2.50.01 provides instruction on section 1108. In relevant part, that statute states: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108, subd. (a).)

14.

With CALCRIM No. 852A, the jurors were told that, even if they concluded appellant had committed the prior uncharged domestic violence, that was only one factor to consider and it was not sufficient by itself to prove appellant's guilt of criminally threatening the victim or intimidating her to not report him to law enforcement. The jurors were told that the prosecution still had to prove each charge and allegation beyond a reasonable doubt. The jurors were informed they could not consider the evidence regarding the uncharged prior act "for any other purpose."

It is clear the jury carefully weighed and considered the evidence. The jury acquitted appellant in count I and it found not true that appellant acted "in a malicious manner" when attempting to dissuade the victim in count III in violation of Penal Code section 136.1, subdivision (c). However, the evidence was overwhelming regarding appellant's guilt in counts II and III.

Based on this record, we can declare harmless any presumed instructional error with CALCRIM No. 852A. Based on the standard articulated in *Chapman*, we can declare beyond any reasonable doubt that any assumed error did not contribute to the verdicts. (See *Chapman*, *supra*, 386 U.S. at p. 24; *People v. Aranda*, *supra*, 55 Cal.4th at p. 367.) This alleged error was unimportant in relation to everything else the jury considered regarding appellant's guilt. (See *Yates v. Evatt* (1991) 500 U.S. 391, 403, disapproved on other grounds in *Estelle v. McGuire* (1991) 502 U.S. 62, 72–73, fn. 4.) In other words, it is apparent the guilty verdicts actually rendered in this trial were surely unattributable to the error. (See *Sullivan v. Louisiana* (1993) 508 U.S. 275, 279.) Accordingly, prejudice is not present, and it is not appropriate to reverse appellant's judgment.

**III.** **The Trial Court Did Not Abuse Its Discretion In Permitting Introduction Of Evidence That Appellant Resisted Arrest And Any Presumed Error Is Harmless.**

Appellant claims the trial court abused its discretion in allowing the prosecutor to introduce evidence that appellant resisted arrest on the night in question. He seeks reversal of his convictions.

**A.** **Background.**

Prior to trial, the court ruled that the prosecution could introduce evidence regarding how appellant was taken into custody on the night he was arrested. In arguing for the admission of this evidence, the prosecutor asserted that the victim had reported appellant is aggressive when he is intoxicated. It was the prosecutor's understanding that Armstrong, the officer who physically detained appellant on the night in question, had noted in his report that appellant was intoxicated that night and appellant acted aggressively. The prosecutor asserted that Armstrong should be permitted to testify about appellant's behavior that night. According to the prosecutor, Armstrong's testimony would corroborate the victim regarding how she felt "and what happened that night."

In contrast, defense counsel argued that the evidence of how appellant was "taken to the ground" was not relevant. Defense counsel asserted that this would prejudice the jury against him.

The trial court ruled that the proposed evidence appeared relevant, and the court believed it was more probative than prejudicial. The court stated that Armstrong's proposed testimony appeared to have some value in corroborating the victim's proposed trial testimony. The court concluded it would allow Armstrong's trial testimony.

At trial, Armstrong testified that he accompanied Lopez to the victim's residence on the night in question. After interviewing the victim, Lopez told appellant that he was under arrest. According to Armstrong, appellant began to resist him, and he tried to pull away from him.

16.

At trial, Armstrong testified that appellant had not appeared intoxicated, but appellant was not cooperative. According to Armstrong, appellant was "[p]assively aggressive." Armstrong took control of appellant, and "took him to the ground." After appellant was detained, he was moved to the back of a patrol vehicle. Armstrong told the jury that, while appellant was in that vehicle, appellant continued to "kick and hit" the back of the vehicle.

## B. Standard of review.

As we previously noted, an abuse of discretion standard is used to review a trial court's rulings regarding relevancy and admissibility under section 352. (*People v. Jones*, *supra*, 3 Cal.5th at p. 609.) We will not reverse such a ruling unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*Ibid.*)

## C. Analysis.

Appellant argues that the probative value "was miniscule" regarding the evidence of his uncharged resisting arrest. He contends the prejudicial effect of this evidence "was enormous." He asserts the trial court's reasoning was "flawed" regarding the admissibility of this evidence. According to appellant, this evidence could not logically corroborate the victim's testimony, and it was not necessary to prove the charged crimes. Appellant insists this evidence should have been excluded.

We find appellant's assertions unpersuasive. The trial court did not abuse its discretion and any presumed error is harmless.

### 1. The trial court did not abuse its discretion.

In this matter, the prosecution made an offer of proof to the trial court that, on the night appellant was arrested, he appeared intoxicated and he was aggressive, which corroborated the victim's statements to law enforcement. Stemming from this offer of

17.

proof, the trial court had ample grounds to determine such testimony from Armstrong would be relevant at trial.

Except as otherwise provided by statute, the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of the witness's testimony. (§ 780.) We review the trial court's evidentiary ruling based on the record at the time of that ruling. (*People v. Winkler* (2020) 56 Cal.App.5th 1102, 1161; see also *People v. Cervantes* (2004) 118 Cal.App.4th 162, 176 [we normally review a trial court's evidentiary ruling based on the facts known to the trial court at the time of the ruling].)

Armstrong's proposed testimony would tend to show that appellant was acting in an aggressive manner on the night he allegedly struck the victim, and this proposed testimony would suggest that appellant had appeared intoxicated. Such testimony from Armstrong would tend to corroborate the victim's claim that appellant had been drinking that night, and he had acted aggressively towards her, including hitting her. This proposed testimony tended to corroborate the victim's statements to law enforcement. As such, we conclude that the proffered testimony had relevant value. (§ 210.)

We reject appellant's assertions that the proffered testimony was more prejudicial than probative. We do not see how this evidence may have evoked a strong emotional bias against appellant. Although the jury learned that appellant resisted the officers when they tried to take him into custody, nothing reasonably suggests the jurors would have sought to punish him on that basis. (See *People v. Zapien* (1993) 4 Cal.4th 929, 958.) Likewise, it cannot be stated that introduction of this evidence posed an intolerable risk to the fairness of the proceedings or the reliability of the outcome. (See *People v. Waidla*, *supra*, 22 Cal.4th at p. 724.)

Based on this record, the trial court was not required to preclude this evidence based on section 352. The court did not exercise its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (See *People*

*v. Jones*, *supra*, 3 Cal.5th at p. 609.) Therefore, an abuse of discretion is not present, and this claim fails. In any event, we also conclude that any presumed error is harmless.

### 2. Any presumed error is harmless.

Appellant contends that introduction of the "resisting evidence was highly prejudicial." He notes that the victim provided very inconsistent statements and testimony in this matter. He argues that the resisting arrest evidence "would clearly evoke an emotional bias" against him, but it had very little effect on the issues central to his guilt for the charged crimes. He maintains that this evidence portrayed him as a "thug" against Armstrong, and "provided an incentive" for the jury to punish him "for his general conduct rather than the instant offenses." Finally, appellant asserts that the jury underwent "lengthy deliberations," requested clarification on the law, and returned with a split verdict. He maintains that his convictions must be reversed. We disagree.

We have already noted that the jury acquitted appellant in count I. However, the remaining evidence against appellant can be characterized as overwhelming. The victim testified that appellant punched her face with his fist. The victim suffered swelling and bleeding. Moreover, on the night appellant struck her, he told her not to contact the police, and not to say anything. Later, he asked her to withdraw the charges.

The jury heard testimony in this matter on Thursday, March 12 and Friday, March 13, 2020. The trial was continued to Tuesday, March 17, 2020, at which time the parties rested. The jury received the case that day at approximately 2:50 p.m. The following day, and after the court made some clarifications of certain charges and their instructions, the jury returned its verdicts at approximately 11:15 a.m.

Based on this record, it is not reasonably probable appellant would have received a more favorable verdict had the trial court excluded evidence detailing how he resisted arrest. We do not agree that the jury would have been somehow motivated to punish appellant because he pushed back when arrested, or because he continued to act out once

19.

placed inside the police vehicle. We also disagree that the jury's deliberations show that prejudice occurred. Instead, it appears that the jury carefully considered the evidence regarding appellant's guilt. We can declare that, even if the trial court had abused its discretion in permitting introduction of this evidence, any presumed error was harmless. Consequently, prejudice is not present and reversal is not warranted.

**IV.    The Trial Court Did Not Err In Instructing The Jury With CALCRIM No. 362.**

With CALCRIM No. 362, the trial court instructed the jury that, if appellant "made a false or misleading statement before this trial relating to the charged crime, knowing the statement was false or intending to mislead, that conduct may show he was aware of [his] guilt for the crime, and you may consider it in determining his guilt." The jurors were also told that, if they determined appellant "made the statement, it is up to you to decide its meaning and importance. However, evidence that [appellant] made such a statement cannot prove guilt by itself."

This instruction was prompted from the following trial evidence. Lopez testified that she briefly spoke with appellant after she had interviewed the victim on the night in question. According to Lopez, appellant told her that the victim "had hit herself." When Lopez tried to further clarify, appellant told Lopez that she "should know already what had happened." On cross-examination, Lopez admitted that, in Spanish, someone could interpret appellant's words as meaning "a person got hurt" and not necessarily that the victim had hit herself.[12]

On redirect examination, however, Lopez reiterated that she is fluent in Spanish and appellant had told her that the victim hit herself. Lopez wrote that phrase in her report about this incident. Lopez also reviewed her body cam footage and its transcript,

---

**12**    Appellant used the words "se golpio" when speaking with Lopez.

20.

which was prepared by an independent company. According to that transcript, appellant informed Lopez that the victim hit herself.

Appellant argues that the trial court prejudicially erred when it instructed the jury with CALCRIM No. 362. According to appellant, his consciousness of guilt was not necessarily established by this evidence, and the court should have resolved any factual discrepancies in his favor. Moreover, appellant maintains that this instruction permitted the jury to make "a permissive inference" he was guilty of the charged offenses because he made false statements. Appellant insists that such an inference is irrational and violates his constitutional right to due process. Finally, appellant recognizes that CALJIC No. 2.03,[13] the predecessor to CALCRIM No. 362, was upheld by our Supreme Court. However, appellant asserts the language of these two instructions are "materially different" and CALCRIM No. 362 should not be upheld. He seeks reversal of his judgment.

We conclude that the trial court did not err in instructing the jury with CALCRIM No. 362.

In *People v. Crandell* (1988) 46 Cal.3d 833, overruled on another point in *People v. Crayton* (2002) 28 Cal.4th 346, 364–365, our Supreme Court considered a claim that CALJIC No. 2.03 allowed a jury to treat "consciousness of guilt" as tantamount to a confession. (*People v. Crandell*, *supra*, 46 Cal.3d at p. 871.) In rejecting this argument, *Crandell* stated: "Defendant's fear that the jury might have confused the psychological and legal meanings of 'guilt' is unwarranted. A reasonable juror would understand 'consciousness of guilt' to mean 'consciousness of some wrongdoing' rather than

---

**13** CALJIC No. 2.03 reads: "If you find that before this trial [a] [the] defendant made a willfully false or deliberately misleading statement concerning the crime[s] for which [he] [she] is now being tried, you may consider that statement as a circumstance tending to prove a consciousness of guilt. However, that conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide."

21.

'consciousness of having committed the specific offense charged.' The instructions advise the jury to determine what significance, if any, should be given to evidence of consciousness of guilt, and caution that such evidence is not sufficient to establish guilt, thereby clearly implying that the evidence is not the equivalent of a confession and is to be evaluated with reason and common sense. The instructions do not address the defendant's mental state at the time of the offense and do not direct or compel the drawing of impermissible inferences in regard thereto." (*Ibid.*)

Multiple appellate courts have already rejected the arguments that appellant advances in this claim. Although there are "minor differences" between CALCRIM No. 362 and CALJIC No. 2.03, "none is sufficient to undermine our Supreme Court's approval of the language of these instructions." (*People v. McGowan* (2008) 160 Cal.App.4th 1099, 1104.) "Further, CALCRIM No. 362 *limits* the reach of any adverse inference both by telling the jury that it decides the 'meaning and importance' of the evidence and by telling the jury the making of a willfully false statement 'cannot prove guilt by itself.' " (*People v. Burton* (2018) 29 Cal.App.5th 917, 925, quoting CALCRIM No. 362.) Both CALCRIM No. 362 and CALJIC No. 2.03 are "designed to benefit the defense" because the jury is admonished to evaluate evidence that might otherwise be considered inculpatory. (*People v. Burton*, *supra*, 29 Cal.App.5th at p. 925.) Because such evidence cannot prove guilt by itself, "a jury would understand that the consciousness of guilt—however deep it ran—was not the equivalent of a confession." (*Ibid.*)

We reject appellant's assertion that CALCRIM No. 362 created an "irrational permissive inference" that violated his right to due process.[14] Lopez testified that, right

---

[14] "A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." (*Francis v. Franklin* (1985) 471 U.S. 307, 314, fn. omitted.) "A permissive inference" violates due process "only if the suggested

22.

after interviewing the victim, appellant told Lopez that the victim had hit herself. Based on Lopez's testimony, the jurors were entitled to use their reason and common sense to determine whether or not appellant made a false statement. The jurors were then free to conclude that appellant was aware of his guilt if he made a false statement. Under these circumstances, such a finding would not amount to an irrational permissive inference that violated appellant's right to due process. (See *Francis v. Franklin*, *supra*, 471 U.S. at pp. 314–315.)

We conclude that CALCRIM No. 362 is not defective. (See *People v. McGowan*, *supra*, 160 Cal.App.4th at p. 1104 ["we do not believe that CALCRIM No. 362 is an impermissible instruction"].) Instead, the trial court properly left it for the jury to determine whether appellant's statement to Lopez "was false or deliberately misleading, and if so, what weight should be given to that evidence." (*Ibid*.) Indeed, the defense was able to question whether Lopez's understanding was reasonable regarding how appellant phrased his statement in Spanish. Therefore, the trial court did not err in instructing the jury with CALCRIM No. 362. This claim is without merit and it fails.

## DISPOSITION

The judgment is affirmed.

LEVY, Acting P. J.

WE CONCUR:


SMITH, J.


MEEHAN, J.

---

conclusion is not one that reason and common sense justify in light of the proven facts before the jury." (*Id.* at pp. 314–315.)

23.